IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW GENERATION DEVICES, INC., a New Jersey Corporation <br><br> Plaintiffs, <br><br> v. <br><br> SLOCUM ENTERPRISES, INC., an Oregon Corporation; and D. BARCLAY SLOCUM TRUST AGREEMENT <br><br> Defendants. | **Civil Action No. 04-2583 KSH** <br><br> **[DOCUMENT ELECTRONICALLY FILED]** |

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION
DATED MAY 28, 2005**

Michael R. Friscia (MF-8363)
Scott S. Christie (SC-8280)
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel: (973) 622-4444
Fax: (973) 624-7070

Counsel for Plaintiffs
NEW GENERATION DEVICES, INC.

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ........................................................................................1

**FACTUAL BACKGROUND** ........................................................................1

**ARGUMENT** ...............................................................................................4

I. THE REPORT AND RECOMMENDATION IMPROPERLY RELIED ON SALES PERCENTAGES, AND DID NOT FAIRLY CONSIDER THE SUBSTANIAL CONTINUOUS AND SYSTEMATIC BUSINESS CONDUCTED BY DEFENDANTS IN NEW JERSEY ..............................................4

A. The Sales Percentages Relied On in the Report and Recommendation are Irrelevant in Determining Personal Jurisdiction ..............................................4

B. Because of the Substantial, Continuous, and Systematic Business Conducted by Defendants in New Jersey, Defendants are Subject to Personal Jurisdiction in New Jersey ..............................................7

II. THE REPORT AND RECOMMENDATION FAILED TO CONSIDER, IN ADDITION TO THE CONTINUOUS AND SYSTEMATIC SALES OF DEFENDANTS IN NEW JERSEY, THE NEW JERSEY SALES NETWORK THAT DEFENDANTS MAINTAIN THROUGH LICENSED NEW JERSEY VETERINARIANS AND ITS WEBSITE ..............................................9

**CONLUSION** ...............................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d, 1558 (Fed. Cir. 1994) .............. 6

*Gehling v. St. George's School of Medicine*, 773 F.2d 539 (3d Cir. 1985) .......................... 5

*Helicopteros Nacionales de Columbia, S.A. v. Hall, et al.*, 466 U.S. 408 (1984) ............ 5, 7

*Provident National Bank*, 819 F.2d 434 (3d. Cir. 1987) ........................................... 4, 5, 7, 8

## STATE CASES

*Gulentz v. Fosdick*, 320 Pa. Super. 38, 466 A.2d 1049 (1983) ............................................. 5

*Telemac Corporation v. Phonetec, L.P.*, 2005 WL. 701605 (N.D. Cal. 2005) .................... 6

## FEDERAL STATUTES

Fed. R. Civ. P. 72(b) ............................................................................................................. 1

## INTRODUCTION

Plaintiff New Generation Devices, Inc. ("New Generation") hereby objects to, and preserves all rights to appeal from, the May 28, 2005 Report and Recommendation of Magistrate Judge Patty Shwartz recommending granting the Defendants' Motion to Dismiss for lack of personal jurisdiction. Pursuant to Fed. R. Civ. P. 72(b), a *de novo* review of the Report and Recommendation is required. New Generation respectfully submits that personal jurisdiction exists in New Jersey over the Defendants, Slocum Enterprises, Inc. and D. Barclay Slocum Trust (collectively, "Slocum"). Specifically, New Generation submits that this Court has general personal jurisdiction over Slocum and that the Report and Recommendation was improperly based on Slocum's New Jersey sales percentages, even though it is well-settled that sales percentages are irrelevant in the determination of personal jurisdiction. Further, the Report and Recommendation overlooked the additional factor of Slocum's established and active sales network in New Jersey, which is promoted by the Slocum website.

## FACTUAL BACKGROUND

Slocum conducts substantial, continuous, and systematic business in New Jersey. Since 2001, Slocum has sold nearly $100,000 of products to New Jersey customers. Slocum's revenues from New Jersey sales grew from $12,609 in 2001, to $21,228.05 in 2002, to $30,554.42 in 2003, and remained essentially level at $29,642.59 in 2004. (Declaration of Scott Christie ("Christie Decl.") submitted in support of Plaintiff's Opposition to Defendants' Motion to Dismiss, ¶ 3, Exh. B; Transcript of May 23, 2005 oral argument ("Tr."), annexed to the Supplemental Declaration of Scott Christie ("Supp. Christie Decl.") submitted herewith, as

1

Exhibit B, at 49:3-6). As such, Slocum averaged sales of approximately $30,000 per year in New Jersey over the past two years.

In connection with its sales to New Jersey over the last four years, Slocum has sent 143 invoices and 67 follow-up statements to New Jersey customers (Christie Decl., ¶ 3, Exh. B). These invoices indicate that approximately 990 Tibial Plateau Leveling Osteotomy ("TPLO") plates were sold in New Jersey since 2001, which means that as many as 990 TPLO surgical procedures using Slocum's products have been performed in New Jersey since 2001. Slocum also sends flyers and promotional material to New Jersey by way of the inclusion of such information with products sent to New Jersey veterinarians. (Supp. Christie Decl., ¶ 2, Exh. A at 83:2-16). Both Slocum Enterprises and the Slocum Trust make money on sales to New Jersey, because all profits made by Slocum Enterprises flow directly to the Slocum Trust as the 100% owner of Slocum Enterprises. (Christie Decl., ¶ 4, Exh. C at 188:13-15; Tr. 39:12-25).

Slocum's sales to New Jersey are not happenstance; Slocum established and maintains an active sales network in New Jersey through its certification and licensing program, which it promotes through its website. (Christie Decl., ¶ 2, Exh. A). Slocum Enterprises has successfully recruited and trained numerous New Jersey veterinarians to practice its patented TPLO technique. (Christie Decl., ¶ 2, Exh. A). Slocum Enterprises trains veterinarians through a certification course that it administers. (Christie Decl., ¶ 4, Exh. C at 21:4-27:25; ¶ 12, Exh. K). Invoices for the certification courses are directed by Slocum Enterprises to the New Jersey veterinarians at their New Jersey addresses. (Christie Decl., ¶ 4, Exh. C at 352:14-21). Once a New Jersey veterinarian completes the certification course, the Slocum Trust signs a User License Agreement with the New Jersey veterinarian granting the veterinarian a non-transferrable, non-assignable, non-exclusive license to perform the patented TPLO technique, but

only with TPLO plates sold by Slocum Enterprises. (Christie Decl., ¶ 10, Exh. I; ¶ 11, Exh. J). In other words, New Jersey TPLO certified veterinarians had and continue to have an obligation to purchase a Slocum Enterprises TPLO plate for each limb upon which they perform surgery employing the TPLO technique. (Christie Decl., ¶ 4, Exh. C at 130:10-23, 159:7-20).

Not only does the license agreement provide for the veterinarian to purchase product from Slocum, it also requires the veterinarians to report any "unauthorized activity with respect to SLOCUM's patented Tibial Plateau Leveling Osteotomy procedure and Tibial Plateau Leveling Osteotomy device(s)" or risk "termination of the agreement." (Christie Decl., ¶ 11, Exh. J). As such, the New Jersey licensed veterinarians serve not only as a sales network organized and promoted by Slocum, but also as Slocum's eyes and ears in New Jersey, on the look-out for any activity unauthorized by Slocum. Since 1999, Slocum has certified and licensed 12 New Jersey veterinarians. (Tr. 58:10-12).[1] In addition to licensed veterinarians, Slocum also sells products to uncertified veterinarians. (Christie Decl., ¶ 4, Exh. C at 114:4-7). Slocum takes orders for such products through its website and/or telephonically through its 800 phone number. (Christie Decl., ¶ 4, Exh. C at 98:10-21, 173:8-16). Slocum ships the products directly to the New Jersey customers at their New Jersey address. (Christie Decl., ¶ 4, Exh. C at 353:7-17). Slocum Enterprises directly bills the New Jersey customers by sending invoices to the New Jersey addresses of the customers. (Christie Decl., ¶ 3, Exh. B). Slocum has at least 14 New Jersey customers. (Christie Decl., ¶ 4, Exh. C at 292:16-307:14; ¶ 9, Exh. H).

The trained, certified and licensed New Jersey veterinarians are promoted by Slocum on a New Jersey page on Slocum's website. (Christie Decl., ¶ 2, Exh. A) Each veterinarian is listed, along with each veterinarian's location and telephone number. (Christie Decl., ¶ 2, Exh. A).

---

[1] At oral argument, Counsel for Defendant was uncertain as to the exact amount of licensed veterinarians in New Jersey. (Tr. 20:2-21:3).

3

This New Jersey portion of Slocum's website allows customers to find certified veterinarians to perform the TPLO procedure on their pets, and provides information to allow other veterinarians to make referrals to the certified veterinarians. In this way, by certifying and licensing New Jersey veterinarians, Slocum maintains an active sales network in New Jersey, and Slocum promotes this network through its website.

Despite these substantial activities by Slocum in New Jersey, the Report and Recommendation relied expressly on sales percentages in denying personal jurisdiction: "Slocum Enterprises [sic] New Jersey sales… were made to, I gather, it's [sic] 11 New Jersey veterinarians representing an average of .766 percent of Slocum Enterprises' total sales." (Tr. 49:6-8). The Report and Recommendation went on to say: "this percentage is just not enough…." (Tr. 71:6).

## ARGUMENT

**I. THE REPORT AND RECOMMENDATION IMPROPERLY RELIED ON SALES PERCENTAGES, AND DID NOT FAIRLY CONSIDER THE SUBSTANTIAL CONTINUOUS AND SYSTEMATIC BUSINESS CONDUCTED BY DEFENDANTS IN NEW JERSEY.**

A. The Sales Percentages Relied On in the Report and Recommendation are Irrelevant in Determining Personal Jurisdiction.

In determining whether personal jurisdiction exists over Slocum, the Report and Recommendation expressly focused on percentages of sales by Slocum in New Jersey, even though it is **well-settled that percentages are irrelevant in determining personal jurisdiction.** In *Provident National Bank v. California Fed. Savings and Loan Ass'n*, the Third Circuit made it very clear that "**the size of the percentage** of [a defendant's] total business … is **generally irrelevant**…." *Provident National Bank*, 819 F.2d 434, 437-38 (3d. Cir. 1987) (emphasis added). The Court went even further, stating "**we do not believe that the absolute amount of**

4

**dollars and customers is more persuasive proof of substantial 'continuous and systematic' activity....**" *Id.* (emphasis added). Thus, neither sales percentages, nor even the quantity of sales, is dispositive on the issue of whether a party has engaged in "continuous and systematic" activity that would subject the party to personal jurisdiction. *Id.* at 437 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 416 (1984)). Rather, the important consideration is whether the nature of a party's contacts with the forum state is "central to the conduct of its business." *Id.* at 438.

The Report and Recommendation distinguishes cases like *Provident* on grounds that it involved millions of dollars of sales. (Tr. 68:6; 73:2-12). However, such a distinction is unsupported in the case law. Rather, the correct inquiry, as is clearly set forth in *Provident*, is whether the sales are central to a party's business and are continuous and systematic. *See Provident*, 819 F.2d at 438. In *Provident*, where the borrowing and lending of money was the bread and butter of its daily business, the defendant had an expectation of being haled into court where it rendered these services. *See id.*

In *Gulentz v. Fosdick*, 320 Pa. Super. 38, 466 A.2d 1049 (1983), the Court held that the fact that only a small percentage of the company's total income was attributable to Pennsylvania activities was irrelevant in determining personal jurisdiction. Rather, the Court held that the defendant was subject to personal jurisdiction in Pennsylvania merely because it routinely drove through the state, consumed fuel in the state, and thereby "availed itself of the privilege of conducting business within the state...." *Gulentz*, 320 Pa. Super. 38, 49 (1983). As such, the Court noted that the defendant's activities were "systematic and continuous **notwithstanding that they represented only a small fraction of its total business.**" *Id.* (emphasis added). Further, in *Gehling v. St. George's School of Medicine*, 773 F.2d 539, 543 (3d Cir. 1985), the

5

Third Circuit cited to *Gulentz* and acknowledged that sales percentages are irrelevant in determining personal jurisdiction.

It should be pointed out that other jurisdictions have also held that sales percentages are irrelevant in determining personal jurisdiction. For example, the Northern District of California has held that a plaintiff "is not precluded from bringing suit in a State just because the bulk of the harm inflicted on it may occur through sales in other States." *Telemac Corporation v. Phonetec, L.P.*, 2005 WL 701605, *4 (N.D. Cal. 2005) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F. 3d, 1558, 1568 at fn. 21 (Fed. Cir. 1994)).

Notwithstanding the above cases, the Report and Recommendation relied expressly on sales percentages in denying personal jurisdiction: "Slocum Enterprises [sic] New Jersey sales… were made to, I gather, it's [sic] 11 New Jersey veterinarians representing an average of .766 percent of Slocum Enterprises' total sales." (Tr. 49:3-8). The Report and Recommendation goes on to say "this percentage is just not enough…." (Tr. 71:6). Additionally, the Report and Recommendation drew the broad conclusion that "amounts of less than 2 percent, when considered with other factors are insufficient…." to confer personal jurisdiction (Tr. 71:1-2), but the case law does not point to any such threshold. Finally, the Report and Recommendation concluded that Slocum's "sales volume in this forum is nowhere near the seven figure range…" (Tr. 73: 10-12), and based on this fact and Slocum's sales percentage in New Jersey, improperly concluded: "Slocum Enterprises's New Jersey sales do not rise to the level of substantial, systematic, and continuous." (Tr. 72:11-13).

B.  Because of the Substantial, Continuous, and Systematic Business Conducted by Defendants in New Jersey, Defendants are Subject to Personal Jurisdiction in New Jersey

In order to be subject to general personal jurisdiction, a party's contacts with a forum state must be continuous and systematic. *See Helicopteros Nacionales de Columbia, S.A. v. Hall, et al.*, 466 U.S. 408, 415-16 (1984). The proper standard was further described in *Provident*, where the Court noted that a party's "purposeful and extensive availment" of a forum, and not "the substantiality of the absolute dollar amounts involved," that is important in determining personal jurisdiction. *Provident*, 819 F.2d at 437. Further, a court should also consider the degree to which a party's contacts with the forum are "central to the conduct of its business." *Id.* In the present case, there is no mistaking that Slocum purposefully and extensively availed themselves of New Jersey: they have continuously and systematically conducted business in New Jersey over the years, and they have made efforts to increase its New Jersey sales through its New Jersey sales network. Further, Slocum's New Jersey sales are central to the conduct of its business: they sell veterinary products and services. *See Provident*, 819 F.2d at 438.

Contrary to the conclusions set forth in the Report and Recommendation, Slocum has engaged in sales in New Jersey that are continuous and systematic. Since 2001, Slocum has sold nearly $100,000 of products to New Jersey customers. Slocum's revenues from New Jersey sales grew from $12,609 in 2001, to $21,228.05 in 2002, to $30,554.42 in 2003, and remained essentially level at $29,642.59 in 2004. (Christie Decl., ¶ 3, Exh. B; Tr. 49:3-6). As such, Slocum averaged sales of approximately $30,000 per year in New Jersey over the past two years. In connection with its sales to New Jersey over the last four years, Slocum has sent 143 invoices and 67 follow-up statements to New Jersey customers (Christie Decl., ¶ 3, Exh. B). These

invoices indicate that approximately 990 Tibial Plateau Leveling Osteotomy ("TPLO") plates were sold in New Jersey since 2001, which means that as many as 990 TPLO surgical procedures using Slocum's products have been performed in New Jersey since 2001. These activities are systematic and continuous, notwithstanding that they represent only a small fraction of Slocum's total business. *See Provident*, 819 F.2d at 438. Also, these activities are the bread and butter of Slocum's business, and by conducting its business in New Jersey in a continuous and systematic manner, Slocum could reasonably expect to be haled into court in New Jersey.

In an effort to increase its New Jersey business, Slocum also sends flyers and promotional material to New Jersey by way of the inclusion of such information with products sent to New Jersey veterinarians. (Supp. Christie Decl., ¶ 2, Exh. A at 83:2-16). Both Slocum Enterprises and the Slocum Trust make money on sales to New Jersey, because all profits made by Slocum Enterprises flow directly to the Slocum Trust as the 100% owner of Slocum Enterprises. (Christie Decl., ¶ 4, Exh. C at 188:13-15; Tr. 39:12-25). Accordingly, by virtue of its substantial sales and its continuous and systematic business in New Jersey, and its efforts to increase its business in New Jersey, Slocum has clearly availed itself of New Jersey jurisdiction. Further, there is no doubt that New Jersey has an interest in adjudicating this dispute, where a patent monopoly has been exploited in New Jersey for the purpose of licensing veterinarians and to create and satisfy demands for patented products in New Jersey.

## II. THE REPORT AND RECOMMENDATION FAILED TO CONSIDER, IN ADDITION TO THE CONTINUOUS AND SYSTEMATIC SALES OF DEFENDANTS IN NEW JERSEY, THE NEW JERSEY SALES NETWORK THAT DEFENDANTS MAINTAIN THROUGH LICENSED NEW JERSEY VETERINARIANS AND ITS WEBSITE.

Although the Report and Recommendation considered whether or not Slocum's website was active or passive, it failed to consider the extensive New Jersey sales network that Slocum has established and promoted on the Slocum website. This New Jersey sales network shows Slocum's purposeful and extensive availment of New Jersey. Slocum's certified veterinarians essentially operate as New Jersey distributors of Slocum products.

Slocum's New Jersey sales network is carefully maintained and well advertised. Slocum Enterprises has successfully recruited and trained numerous New Jersey veterinarians to practice its patented TPLO technique. (Christie Decl., ¶ 2, Exh. A). Slocum Enterprises trains veterinarians through a certification course that it administers. (Christie Decl., ¶ 4, Exh. C at 21:4-27:25; ¶ 12, Exh. K). These trained, certified and licensed New Jersey veterinarians are promoted by Slocum on a New Jersey page on Slocum's website. (Christie Decl., ¶ 2, Exh. A) Each veterinarian is listed, along with each veterinarian's location and telephone number. (Christie Decl., ¶ 2, Exh. A). This New Jersey portion of Slocum's website allows customers to find certified veterinarians to perform the TPLO procedure on their pets, and provides information to allow other veterinarians to make referrals. In this way, Slocum maintains an active sales network in New Jersey, and Slocum promotes this network through its website. It is absolutely clear that Slocum targets New Jersey on the New Jersey page of its website.

Invoices for the certification courses are directed by Slocum Enterprises to the New Jersey veterinarians at their New Jersey addresses. (Christie Decl., ¶ 4, Exh. C at 352:14-21).

9

Once a New Jersey veterinarian completes the certification course, the Slocum Trust signs a User License Agreement with the New Jersey veterinarian granting the veterinarian a non-transferrable, non-assignable, non-exclusive license to perform the patented TPLO technique, but only with TPLO plates sold by Slocum Enterprises. (Christie Decl., ¶ 10, Exh. I; ¶ 11, Exh. J). In other words, New Jersey TPLO certified veterinarians had and continue to have an obligation to purchase on Slocum Enterprises TPLO plate for each limb upon which they perform surgery employing the TPLO technique. (Christie Decl., ¶ 4, Exh. C at 130:10-23, 159:7-20).

Not only does the license agreement provide for the veterinarian to purchase product from Slocum, it also requires the veterinarians to report any "unauthorized activity with respect to SLOCUM's patented Tibial Plateau Leveling Osteotomy procedure and Tibial Plateau Leveling Osteotomy device(s)" or risk "termination of the agreement." (Christie Decl., ¶ 11, Exh. J). As such, the New Jersey licensed veterinarians serve not only as a sales network organized and promoted by Slocum, but also as Slocum's eyes and ears in New Jersey, on the look-out for any activity unauthorized by Slocum. In addition to licensed veterinarians, Slocum also sells products to uncertified veterinarians. (Christie Decl., ¶ 4, Exh. C at 114:4-7). Slocum takes orders for such products through its website and/or telephonically through its 800 phone number. (Christie Decl., ¶ 4, Exh. C at 98:10-21, 173:8-16). Slocum ships the products directly to the New Jersey customers at their New Jersey address. (Christie Decl., ¶ 4, Exh. C at 353:7-17). Slocum Enterprises directly bills the New Jersey customers by sending invoices to the New Jersey addresses of the customers. (Christie Decl., ¶ 3, Exh. B). Slocum has at least 14 New Jersey customers. (Christie Decl., ¶ 4, Exh. C at 292:16-307:14; ¶ 9, Exh. H).

Regardless of the active or passive nature of the website, it serves an important role in linking New Jersey residents to Slocum's TPLO-certified New Jersey veterinarians. As such, the

website furthers Slocum's sales and marketing efforts in New Jersey by promoting its cadre of trained veterinarians and encouraging New Jersey residents and veterinarians to contact these individuals. The website, with its New Jersey page that promotes a sales network of licensed New Jersey veterinarians, is further evidence of Slocum's continuous and systematic contacts with New Jersey.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Report and Recommendation dated May 28, 2005 should not be adopted by the Court. The Defendants have engaged in a continuous and systematic course of conduct that subjects it to jurisdiction in New Jersey. Therefore, Plaintiff respectfully requests that the Court find that Defendants are subject to personal jurisdiction in this state.

Respectfully submitted,

Dated: June 14, 2005

s/ Michael R. Friscia
MICHAEL R. FRISCIA (MF-8363)
SCOTT S. CHRISTIE (SC-8280)
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Attorneys for Plaintiff
New Generation Devices, Inc.