1  declaration (sic) at Page 173, Lines 5 to 16, but the Court
2  was not presented with any evidence that customers actually
3  consummated transactions online.

4         There has been no evidence provided as to the
5  billing link or the frequency of use of either the billing or
6  the orders link, and whether or not they've ever been used to
7  purchase products or used by the veterinarians in New Jersey,
8  or others in New Jersey.

9         Shortly before his death in April of 2001, D.
10  Barclay Slocum transferred the T.P.L.O. patents to the Slocum
11  Trust.  The Slocum Trust is situated in Oregon and it owns no
12  assets outside of that state.  See Ms. Slocum's declaration
13  at Paragraph 4.  Its primary beneficiaries are Slocum family
14  members, including its sole trustee, Ms. Slocum.  See her
15  declaration at Paragraphs 1 to 4.  The Trust has no
16  beneficiaries, employees, representatives, properties, or
17  other assets in New Jersey.  See her declaration at Paragraph
18  4.

19         Since 2001, after a veterinarian completed a
20  training seminar conducted by Slocum Enterprises, the Slocum
21  Trust would enter into a "user license agreement."  To date,
22  the Slocum Trust has entered into at least seven such
23  agreements with New Jersey veterinarians.  The user license
24  agreements grant the veterinarians a non-exclusive license to
25  use Slocum Enterprises' patented devices.  See Mr. Christie's

Court Decision                                    52

1   declaration at Exhibit I, Bates No. 02920.  See also Ms.

2   Slocum's declaration at Paragraph 6.

3          The user license also obligates the licensee to

4   purchase such devices from Slocum Enterprises.  See Mr.

5   Christie's declaration, Exhibit I, at Bates 02921, Paragraph

6   4.1, which is a portion of the license that's given to the

7   veterinarians who complete the seminars.

8          It also stipulates to the validity of the --

9   strike that --

10         The license agreement also requires the licensee

11  to stipulate to the validity of the patent embodied in the

12  devices; see Paragraph 5 of the license; give Slocum the

13  right to monitor the licensee's use of the product; see

14  Paragraph 6.1; obligates the licensee to use its best efforts

15  to use the devices in accordance with the techniques taught

16  at the seminars; see Paragraph 6.2 of the license, and

17  obligates the licensee to notify the patent holder of "any

18  unauthorized activity" with respect to the patented devices.

19  See Paragraph 9.

20         Notably, the user license agreements contain a

21  choice of law and forum selection provision, which chooses

22  Oregon law and requires disputes to be resolved in Oregon.

23  See Paragraph 11.4 of the license agreement, and this one

24  happens to appear in Bates No. 02924.  The Court notes that

25  of course New Generation is not a licensee and is not a party

Court Decision                                53

1   to these forum selection clauses or choice of law provisions,

2   but it indicates at least what the Slocum Trust believed the

3   forum it would litigate its dispute with the veterinarians

4   would be.

5        Defendants assert that Slocum Trust and Slocum

6   Enterprises are separate legal entities, with separate

7   records, income, and expenses.  See the declaration of Ms.

8   Slocum at Paragraph 4.  Defendants assert that Slocum Trust

9   takes no part in the enrollment or administrative aspects of

10  the training seminars and does not solicit any attendees or

11  licensees, and after the executing the agreement has no

12  further contact with the veterinarians.  See Ms. Slocum's

13  declaration at Paragraph 6.

14       Slocum Enterprises is wholly owned by the Slocum

15  Trust, and pursuant to the user license agreement, Slocum

16  Enterprises pays Slocum Trust a fixed licensing fee of $1,000

17  for every patented device it sells for more than $2,000.  See

18  Mr. Christie's declaration, Exhibit C, the deposition at Page

19  187, Lines 15 to 24, and 189, Lines 2 to 10.

20       Slocum Trust is the sole shareholder of Slocum

21  Enterprises and so all profits of Slocum Enterprises flow to

22  the Slocum Trust.  See Mr. Christie's declaration, Exhibit C,

23  Page 189, Lines 2 through 11.  I note that there's been some

24  argument about what that factor can be used to show, but it's

25  undisputed that that's how the monies do flow.

1           In another lawsuit, Slocum Enterprises and the

2     Slocum Trust sued New Generation in the United States

3     District Court for the District of Oregon for infringement of

4     the patents in suit.  Slocum filed that complaint on February

5     12th, 2004.  See the Slocum declaration at Paragraph 12.  The

6     District Court dismissed the complaint for lack of personal

7     jurisdiction over New Generation and at other events with the

8     parties, the Court has been advised that that is the subject

9     of an appeal to the Federal Circuit.

10          On June 2nd, 2004, before the Oregon case was

11    dismissed, the plaintiff, New Generation, here filed this

12    action for a declaratory judgment for non-infringement,

13    unenforceability, and invalidity.  The defendants filed their

14    original motion to dismiss or transfer this action on

15    September 20th, 2004.  The defendants agreed to withdraw that

16    motion without prejudice because of their delay in responding

17    to jurisdictional discovery.

18          During jurisdictional discovery, the Slocum Trust

19    and Slocum Enterprises answered approximately 20

20    interrogatories and document demands and Ms. Slocum was

21    deposed for two days.  See the Slocum declaration at

22    Paragraph 14.  On April 6th, 2005 the defendants filed the

23    motion that we have before the Court now, which is the motion

24    to dismiss the case for lack of personal jurisdiction.  There

25    was no request that the Court entertain transfer as part of

1  the motion.

2          In support of the motion, the defendants have

3  argued both in their papers and in court today that neither

4  the Trust nor the Enterprises has sufficient minimum contact

5  with New Jersey, and that exercising jurisdiction over them

6  would violate due process.  Specifically, defendants argue

7  that Slocum Trust's New Jersey contacts are limited to the

8  seven T.P.L.O.s certified New Jersey veterinarians with whom

9  it has user license agreements.  That was what was said in

10 their brief at Pages 11 to 12.  I note for the record that

11 here today there's been a suggestion that over time there's

12 been up to 11 licensees of the total of 992 licenses that the

13 Trust issued.

14         In any event, the defendants argue that Slocum

15 Trust did not purposely avail itself to New Jersey because it

16 did not solicit any New Jersey veterinarians, the user

17 license agreements select Oregon law, and choose the Oregon

18 forum for disputes.  The agreement allows New Jersey

19 certified veterinarians to practice not in New Jersey, but

20 anywhere in the world, and the Trust had no further contact

21 with the veterinarians after the execution of the license

22 agreement.  See the brief at Pages 12 to 13.

23         The defendants argue, therefore, this action

24 should be dismissed as to the Trust.  The defendants also

25 argue the Enterprises lack minimum contacts with New Jersey

Court Decision                                    56

1  because it is based in Oregon, conducts seminars largely in

2  Oregon, and never had one in New Jersey, does not advertise

3  nationally, but relies on customers seeking information from

4  it in Oregon, and its sales in New Jersey account for less

5  than 1 percent of its total sales between 2001 and 2004.   See

6  its brief at Page 14.

7           Moreover, defendants argue Slocum Enterprises'

8  website, which does not allow customers to purchase products,

9  but allows customers to enter their contact information to

10 receive product and seminar information is passive and,

11 therefore, cannot form the basis of general personal

12 jurisdiction.  See their brief at Page 16.  I note, however,

13 that there was a reference by Ms. Slocum during her

14 deposition to suggest that one could get a videotape through

15 the website, suggesting that you could actually order it and

16 have it delivered to you.  Whether there was a fee for that,

17 however, is not clear from the information submitted to the

18 Court.

19          Thus, defendants have argued that the Enterprises

20 does not have sufficient general personal jurisdiction

21 contacts with New Jersey.  The defendants further argue that

22 even if the plaintiff were to establish sufficient minimum

23 contacts, the burden of forcing them to litigate in New

24 Jersey would violate due process.  See their brief at Page

25 17.  They assert that the Slocum Enterprises are small,

1  centrally located in Oregon, and pursuing their patent rights
2  in New Jersey would be unduly burdensome for the entities and
3  for Mrs. Slocum who controls them.

4          Moreover, the defendants argue that the --
5  Oregon's interest in providing a forum for its residents to
6  assert their patent rights is greater than New Jersey's
7  interest in providing its resident a forum for defending
8  against such claims or seeking a declaration as the type here
9  sought.

10         Defendants argue since two of the three parties
11 are on the west coast and since the patents were developed
12 and practiced there, resolution would be more efficient in
13 Oregon and for all those reasons, they argue that having
14 jurisdiction in New Jersey would violate due process.

15         In opposition, the plaintiffs have argued the
16 defendants targeted the New Jersey veterinarians by training,
17 certifying, and licensing them with the T.P.L.O. technique
18 and maintain a monopoly over New Jersey licensees to market
19 their devices and the T.P.L.O. procedures.  See the
20 plaintiff's brief at 9 and 10.

21         During oral argument today, counsel for the
22 plaintiff further elaborated about the way that the defendant
23 directed its interest in those in New Jersey to use its
24 devices, by the way the website was set up and the fact it
25 specifically identified veterinarians in New Jersey who

1    practice the procedure and provide the implements for doing

2    it.

3              Plaintiffs argue that personal jurisdiction is

4    proper over the Trust because it signed a user licensor

5    agreement with at least seven New Jersey veterinarians,

6    again, this is how it's been characterized in the brief,

7    thereby creating a growing demand for New Jersey

8    veterinarians that were required to Slocum Enterprises

9    products.  See their brief at Pages 10 to 11.

10             I note for the record that again today it was made

11   clear that the number of licensees in New Jersey over the

12   period 1999 to June 2nd, 2004 is 11.

13             Since the Trust funds Slocum Enterprises,

14   plaintiff argues the Trust benefitted from Enterprises's

15   increased sales.  The plaintiff has also argued that the

16   Enterprises historically has had 14 New Jersey new customers,

17   at least half of which have been active, and that there have

18   been steady increases in New Jersey sales, for which a total

19   of 143 invoices were mailed to New Jersey and that this

20   demonstrates substantial contacts with this District.  See

21   Pages 11 and 12 of the brief.

22             Moreover, plaintiff argues defendant Slocum

23   Enterprises's website is sufficiently interactive to assert

24   personal jurisdiction over the defendants.  Plaintiff argues

25   by listing certified veterinarians by state, the website

1   entices New Jersey customers and advertising Slocum
2   Enterprises to procure products from Slocum Enterprises.   See
3   their brief at Page 12.   And I note this further elaborated
4   here in court today.

5          Plaintiff argues that the website's capacity to
6   enter information and its listing of Slocum Enterprises's
7   contact information and e-mail address for which the public
8   can communicate with Enterprises, makes it interactive in
9   nature and, therefore, sufficient to confer personal
10  jurisdiction over Slocum Enterprises in New Jersey.   See
11  plaintiff's brief at Page 13.

12         Plaintiff further argues there is specific
13  personal jurisdiction over the defendants because the cause
14  of action arises out of a dispute over the very patents from
15  which defendants profits through their product sales and
16  licensing agreements in New Jersey.   See their brief at Page
17  16.

18         Plaintiff also argues, "There is such an
19  indistinguishable relationship between Slocum Enterprises and
20  Slocum Trust that the company's contacts with New Jersey
21  residents should be attributed to Slocum Trust for the
22  purposes of determining personal jurisdiction."   See their
23  brief at Page 17.

24         In short, they're suggesting that they're -- the
25  plaintiffs are suggesting that there is -- the defendants are

1   alter egos of each other and, therefore, the corporate
2   niceties should be pierced and you should be able to
3   attribute the contacts that one has to the contacts that the
4   other has.

5         Plaintiff argues personal jurisdiction is
6   consistent with due process because the inconvenience would
7   be only to Mrs. Slocum who controls both the defendants.
8   Plaintiffs argue New Jersey has an interest in providing it
9   with a forum to adjudicate its rights with respect to the
10  patents in suit and that New Jersey -- proceeding in New
11  Jersey would not unfairly burden the defendants, and for all
12  these reasons, they argue personal jurisdiction is proper.

13        The defendants in their reply argue there's no
14  basis for specific personal jurisdiction because neither
15  defendant has directed activities to New Jersey residents,
16  but rather from their perspective, all the contact came from
17  New Jersey veterinarians who looked to contact the
18  defendants.

19        The defendants further argue that plaintiff's
20  allegedly infringing conduct does not arise form its New
21  Jersey sales and, therefore, these contacts cannot form the
22  basis of specific personal jurisdiction.  They also argue in
23  reply that finding personal jurisdiction would not be fair or
24  reasonable.  They further argue that the Slocum Trust is not
25  a -- strike that.

1          They further argue that Slocum Trust is a distinct
2    legal entity and not an alter ego of Enterprises, and that
3    the trust has virtually no contact with New Jersey and cannot
4    be subject to personal jurisdiction and, therefore, the case
5    should be dismissed under Rule 19A for failure to join an
6    indispensable party.

7          As you can tell from the questions at argument, I
8    was not probing that topic and so I didn't -- and it was a
9    new argument raised only in reply.  I don't recall that being
10   raised in the main papers, so I have not accounted -- I have
11   not taken into account that argument.

12         The defendants argue the plaintiff has exaggerated
13   Enterprises contacts in New Jersey and that its sales
14   represent less than 1 percent, and neither of these can form
15   a basis for specific general jurisdiction.  And finally, they
16   argue that while the website allows entry of information and
17   requests for product information, it is not used to transact
18   business and, therefore, does not have the requisite
19   interactiveness to form the basis for personal jurisdiction
20   in New Jersey.

21         Federal Circuit law governs personal jurisdiction
22   issues in patent cases.  Silent Drive, Inc. v. Strong
23   Industries, 326 F.3d 1194 at 1201 (Fed. Cir. 2003),
24   Hildebrand v. Steck Manufacturing Co., 279 F.3d 1351, 1354
25   (Fed. Cir. 2002).

1        In determining whether personal jurisdiction

2    exists over a foreign defendant, the Federal Circuit

3    considers; one, whether or not the forum state's long arm

4    statute permits service of process on the defendant; and two,

5    whether or not asserting personal jurisdiction over the

6    defendant is consistent with due process.  Inamed Corp. v.

7    Kuzmak, 249 F.3d 1356, 1359-1360 (Fed. Cir. 2001).

8        New Jersey's long arm rule extends jurisdiction

9    over nonresident defendants to the full extent permitted by

10   the United States Constitution.  Carteret Savings Bank, F.A.

11   v. Shushan, 954 F.2d 141, 145 (3d. Cir. 1992).

12       The Federal Circuit applies the due process

13   analysis and is developed under the Fourteenth Amendment

14   rather than the Fifth Amendment, and the minimum contacts

15   standard that arises from it.  See LSI Industries, Inc. v.

16   Hubbell Lighting, Inc., 232 F.3d 1369, 1375, Note 5 (Fed.

17   Cir. 2000) citations omitted; Deprenyl Animal Health, Inc. v.

18   University of Toronto Innovations Foundation, 297 F.3d 1343,

19   1350 (Fed. Cir. 2002).  Thus, the Court must consider whether

20   or not asserting personal jurisdiction over the defendants

21   would violate the due process clause of the Fourteenth

22   Amendment.

23       Personal jurisdiction under the due process clause

24   of the Fourteenth Amendment requires proof of a sufficient

25   "relationship among the defendant, the forum, and the

1   litigation..." <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204 (1977).

2          Stated differently, the defendant's contacts with

3   the forum state should be such that it "should reasonably

4   anticipate being hailed into court there." <u>World-Wide</u>

5   <u>Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).

6          Due process permits the assertion of personal

7   jurisdiction over a defendant only if it has "minimum

8   contacts" with the forum state "such that the maintenance of

9   the suit does not offend traditional notions of fair play and

10  substantial justice." <u>International Shoe v. State of</u>

11  <u>Washington Office of Unemployment Compensation and Placement</u>,

12  326 U.S. 310, 316 (1945) internal quotation marks and

13  citations omitted.

14         Thus, the Court must first consider whether or not

15  minimum contacts exist.  A plaintiff may show minimum

16  contacts by demonstrating either general or specific

17  jurisdiction.  General personal jurisdiction "arises when a

18  defendant maintains continuous and systematic contacts with

19  the forum state even when the cause of action has no relation

20  to those contacts." <u>Trintec Industries, Inc. v. Pedre</u>

21  <u>Promotional Products, Inc.</u>, 395 F.3d 1275, 1279 (Fed. Cir.

22  2005) internal quotation marks omitted; <u>LSI Industries</u>, 232

23  F.3d at 1375.  See also <u>Helicopteros Nacionales de Colombia,</u>

24  <u>S.A. v. Hall</u>, 466 U.S. 408, 414-416 (1984).

25         To show specific personal jurisdiction, the

1  minimum contacts prong requires the plaintiff to show the

2  defendant "has purposely directed his activities at the

3  residence of the forum and the litigation result from alleged

4  injuries that arise out of or relate to those activities."

5  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-473 (1985).

6  See also Trintec, 395 F.3d at 1279 stating, "specific

7  jurisdiction arises out of or relates to the cause of action

8  even if those contacts are isolated and sporadic..." internal

9  quotation marks omitted; Deprenyl, 297 F.3d at 1350-1351,

10  citations omitted.

11         Second, the Court must consider whether or not

12  asserting personal jurisdiction over a defendant "offends

13  traditional notions of fair play and substantial justice."

14  International Shoe, 326 U.S. at 316.

15         The factors considered in determining whether

16  personal jurisdiction would comply with fair play and

17  substantial justice under the due process clause include;

18  one, the burden on the defendant; two, the interests of the

19  forum state; three, the plaintiff's interest in obtaining

20  relief; four, the interstate judicial system's interest in

21  obtaining the most efficient resolution of controversies; and

22  five, the shared interests of the several states in

23  furthering fundamental substantive social policies."  Asahi

24  Metal Industries Co. v. Superior Court of California, 480

25  U.S. 102, 113 (1987), Deprenyl, 297 F.3d at 1355 citations

1 | omitted.

2 |       The plaintiff bears the burden of proving that

3 | exercising personal jurisdiction over a defendant is proper.

4 | Where the parties have not conducted jurisdictional

5 | discovery, the plaintiff need only make a prima facie showing

6 | that personal jurisdiction exists and the court is to

7 | consider the pleadings and affidavits in the light most

8 | favorable to the defendant.  <u>Silent Drive, Inc. v. Strong</u>

9 | <u>Industries</u>, 326 F.3d. 1194, 1201 (Fed. Cir. 2003).

10 |       Where, however, the parties have conducted

11 | jurisdictional discovery, the plaintiff must show personal

12 | jurisdiction by a preponderance of the evidence.  <u>Pieczenik</u>

13 | <u>v. Dyax Corp.</u>, 265 F.3d. 1329, 1334 (Fed. Cir. 2001).  In

14 | this case, the parties have conducted jurisdictional

15 | discovery, both interrogatories and document demands, and the

16 | deposition of Ms. Slocum, and have submitted to the Court for

17 | its consideration documents and exhibits, including the

18 | deposition transcripts of Ms. Slocum related to the issue of

19 | personal jurisdiction.  In addition, Ms. Slocum's declaration

20 | was submitted.  The Court also considered oral argument given

21 | today and the information the parties represented to it.

22 |       Therefore, New Generation must bear the burden of

23 | proving personal jurisdiction by a preponderance of the

24 | evidence.  See also <u>Logan Farms v. H.P.H., Inc.</u>, 282

25 | F.Supp.2d 776, 791 (S.D.Ohio 2003) which talked about the

1   standard of proof in a situation where there has been an

2   opportunity to conduct jurisdictional discovery.

3          The Court now turns to the issue of general

4   personal jurisdiction.  The Supreme Court's various opinions

5   on the issue of general personal jurisdiction "suggests very

6   strongly that the threshold contacts required for general

7   jurisdiction are very substantial indeed."  Wright, Miller,

8   Federal Practice and Procedure:  Civil 2d, Section 1067, 3d

9   Ed. 2002.

10         In determining whether a foreign defendant's

11  activities within the forum are sufficient to find general

12  personal jurisdiction, the Supreme Court has emphasized the

13  following factors; one, being authorized to do business in

14  the forum state; two, having an agent for service of process

15  within the forum; three, selling products and soliciting

16  business in the forum; four, signing contracts; five;

17  recruiting employees from the forum state; and six, owning

18  real or personal property in the forum state.  Helicopteros,

19  466 U.S. at 411.

20         Applying these factors, the Supreme Court has held

21  that the following combination of contacts are insufficient

22  to assert general jurisdiction over a nonresident defendant.

23  For example, simply sending a chief executive officer to the

24  forum for one contract negotiation, or accepting into a bank

25  account in the forum checks -- into another bank account

1 || checks drawn from the forum state, purchasing equipment in
2 || the forum in indiscrete amounts, or sending personnel to the
3 || forum for training.  See <u>Helicopteros</u> at Page 416.

4 ||           The Court, however, has found that having
5 || director's meetings in the forum, having regular business
6 || correspondence, banking, stock transfers, the payment of
7 || salaries, purchases of machinery and the like are enough to
8 || make it fair and reasonable to subject a corporation to
9 || proceedings in the forum state.  See <u>Perkins v. Benguet</u>
10 || <u>Consolidating Mining Co.</u>, 342 U.S. 437, 445 (1952).

11 ||           In short, to find general personal jurisdiction
12 || the plaintiff must demonstrate the defendants had the
13 || requisite substantial, continuous, and systematic general
14 || business contacts with the forum.  See <u>Helicopteros</u>, 466 U.S.
15 || at 415-416.

16 ||           These contacts must be "so substantial and of such
17 || a nature as to justify suit against [the defendant] on causes
18 || of action arising from dealings entirely distinct from those
19 || activities."  <u>International Shoe</u>, 326 U.S. at 318.

20 ||           It is through these principles that the Court
21 || first examines whether or not there is general personal
22 || jurisdiction over Slocum Enterprises.  A survey of patent
23 || cases confirms that the contacts must be substantial to
24 || confer general personal jurisdiction over a foreign
25 || defendant.  For example, the Federal Circuit affirmed without

1   opinion the District Court's determination that 3 percent of

2   sales in the forum was insufficient to establish general

3   jurisdiction.  See <u>Stairmaster Sports/Medical Products, Inc.</u>

4   <u>v. Pacific Fitness Corp.</u>, 916 F.Supp. 1049, 1053 (W.D.Wa.

5   1994), affirmed 78 F.3d 602 (Fed. Cir. 1996).

6           In that case the court noted that where the

7   defendant did not have offices, own property, pay taxes,

8   manufacture its products, have employees, and was not

9   registered to do business in Washington, its sales,

10  advertising for distributors, and isolated visit by employees

11  were insufficient to confer general personal jurisdiction.

12  See also <u>Adell Corp. v. Elco Textron, Inc.</u>, 51 F.Supp.2d 752,

13  757 (N.D.Texas 1999) which held there was no general personal

14  jurisdiction in a patent case where sale of the products in

15  Texas, through a Texas distributor, represented less than 1

16  percent of the total sales.  See also <u>Amana Refrigeration,</u>

17  <u>Inc. v. Quadlux, Inc.</u>, 172 F.3d 852, 857 (Fed. Cir. 1999).

18  In that case, the Federal Circuit affirmed the District

19  Court's dismissal of claims over the foreign defendant for

20  lack of personal jurisdiction because the defendant

21  maintained no property in the forum and made very limited

22  sales in the forum state, solicited sales through national

23  publications, and sent an infringement letter to the

24  declaratory judgment to plaintiff.

25          Patent cases also show that a defendant's contacts

1  are sufficiently substantial, and continuous, and systematic

2  with the forum if it sold millions of dollars of products in

3  the forum over several years, and had a broad distributorship

4  in the forum.  See for example, LSI, 232 F.3d. at 1375.  See

5  also 3-M Innovative Properties Co. v. InFocus Corp., Civ. No.

6  04-0009, 2005 WL 361494 at Page 3 (D.Minn. Feb. 9, 2005).

7           In that case, the District Court of Minnesota

8  followed the guidelines of the Federal Circuit and found

9  general jurisdiction, although the sales accounted for only

10  .64 percent of the total sales because In Focus's sales

11  amounted to millions of dollars of revenue in the forum and

12  In Focus's representatives visited the state almost every

13  other week and had contact with third parties to serve as

14  authorized service centers.  See also Synopsys, Inc. v. Ricoh

15  Co., Ltd., 343 F.Supp.2d 883, 887 (N.D.Cal. 2003).

16           There, the District Court found general

17  jurisdiction where the defendant maintained "a significant

18  business presence in the forum (sales, manufacturing and

19  research and development)," including the fact they had a

20  wholly-owned subsidiary with a license to do business in the

21  forum state and had a sales office there.  See Engine Tech

22  Co., Ltd. v. Advanced Engine Management, Inc., 270 F.Supp.2d

23  1189, 1194-1195 (S.D.Cal. 2003) where the court cited to

24  Federal Circuit precedent and held sales that account for

25  only 2 percent of a defendant's total business are not the

1   kind of systematic and continuous contacts that would warrant

2   the exercise of personal jurisdiction.   See AMP, Inc. v.

3   Methode Electronics, Inc., 823 F.Supp. 259, 268 (M.D.Pa.

4   1993) where the court found general jurisdiction existed

5   where the defendant's sales, although a small part of its

6   total sales, and although sales were routed through sales

7   agents located outside the forum were substantial and were on

8   a regular basis, and this created a significant tie between

9   the forum state and the defendant through the sale of its

10  products in the forum.

11          Outside the patent cases, courts have found

12  percentage of sales within the District at or below 2 percent

13  to be insufficient to find the requisite substantial an

14  systematic contacts with a forum to confer personal

15  jurisdiction.   See, for example, L.H. Carbide, Corp. v. Piece

16  Maker Co., 852 F.Supp. 1425, 1435 (N.D. In. 1994).

17          In that case, they held general jurisdiction was

18  improper because the defendant employed a sales engineer who

19  lived in the forum state, oversaw the company's sales in 30

20  states, and visited Indiana customers every two to three

21  months to ascertain whether they required anything of the

22  company, and called on three to five customers per visit to

23  Indiana, help the customers set up new product purchases, and

24  had sales of 9 percent of its nationwide sales.

25          There are numerous cases and I don't want to labor

1 │ the record with those cases, holding that these amounts of

2 │ less than 2 percent, when considered with other factors are

3 │ insufficient.

4 │          The Court found at least another ten cases, and I

5 │ certainly can put them on the record if counsel wants, that

6 │ says this percentage is just not enough when you don't have

7 │ other factors like a distributorship, regular visitors by a

8 │ representative of the company, and things of that nature, but

9 │ if counsel wants the citations for the benefit of the record

10 │ I can read them in at a later time.

11 │          As in the above cases, Slocum Enterprises lacks

12 │ the requisite substantial, systematic, and continuous

13 │ contacts with New Jersey sufficient to confer general

14 │ personal jurisdiction over it.  Slocum Enterprises does not

15 │ own property in New Jersey, pay taxes in New Jersey, maintain

16 │ offices in New Jersey, have employees in New Jersey, nor is

17 │ it registered to do business here.

18 │          Nothing in the record demonstrates Slocum

19 │ Enterprises ever had any physical presence in New Jersey.

20 │ Indeed, there is no allegation or evidence that any

21 │ representative of Slocum Enterprises has ever come to New

22 │ Jersey to solicit sales or for any other reason.

23 │          While the 143 invoices show commercial activity

24 │ with New Jersey residents, its sales in New Jersey represent

25 │ only .76 percent of the overall sales totalling approximately

1  $94,000 over a four-year period.  See Mr. Christie's

2  declaration, Exhibit C.

3          These activities, however, do not meet the

4  systematic and continuous test, especially absent any other

5  contacts as to sales representatives or an office in New

6  Jersey, or even daily contact.  See, for example, Modern

7  Mailers, 844 F.Supp. 1050, 1051 in which the court held that

8  $231,000 in sales over three years representing .5 percent of

9  total sales was insufficient, even with other contacts with

10 the state.

11         Accordingly, the Court finds Slocum Enterprises's

12 New Jersey sales do not rise to the level of substantial,

13 systematic, and continuous.  In applying this analysis, the

14 Court is mindful that small percentages of sales do not

15 automatically preclude a finding of personal jurisdiction.

16 Such a rule would enable a large corporation to do an

17 enormous amount of trade with a forum state, but then claim

18 it is not subject to general personal jurisdiction because

19 that -- those amount of sales merely are a small percent of

20 its overall sales.  See Vencedor Manufacturing Co., Inc. v.

21 Gougler Industries, 557 F.2d 886, 892 (1st Cir. 1977) where

22 the court held that a company such as General Motors could

23 argue that it is not subject to general personal jurisdiction

24 in Puerto Rico because its sales there compose only a small

25 percent of its national sales, and that sort of test would

Court Decision                              73

1  not be logical.

2          So if the sales were in the millions of dollars,

3  the Federal Circuit has indicated that those sales would be

4  entitled to significant weight in a general personal

5  jurisdiction analysis.  See LSI, 232 F.3d at 1375 where the

6  Federal Circuit found that general jurisdiction exists where

7  a defendant sold millions of dollars worth of lighting, even

8  though it only represented .64 percent of the total sales in

9  the forum because there was also the presence of a broad

10  distributorship there.  The sales volume in this forum is

11  nowhere near the seven figure range, and so this

12  consideration is not applicable here.

13          Now besides the sales volume, the Court has

14  considered documents that show Slocum Enterprises accepted

15  and returned products for which New Jersey purchasers needed

16  maintenance or repair.  This activity, however, is incidental

17  to the commercial activity described above.  See Nichols, 991

18  F.2d at 1200 which found that something derivative of a

19  solicitation within the forum state in itself would be

20  insufficient to confer general personal jurisdiction.  See

21  also Modern Mailers, 844 F.Supp. at 1050-1051 where the court

22  found even ongoing contact with repeat customers to be

23  insufficient.  See also L.H. Carbide, 852 F. Supp. at 1434

24  which found ongoing contact for customers to maintain the

25  product and with assistance with the product among other

1  contacts was not sufficient to confer general personal

2  jurisdiction.

3         Moreover, it appears that it was the New Jersey

4  veterinarians, not Slocum, who initiated the communications

5  out of a dissatisfaction with a product or the need for

6  repair.  Such activity in the forum, therefore, is not

7  sufficiently systematic or continuous to confer general

8  personal jurisdiction.

9         The Court now considers the website.  And based on

10 the way it's been described, the Court's understanding of its

11 operation, the website also does not provide a basis for

12 Slocum Enterprises to have exercised systematic and continued

13 contacts through the website to support a finding of general

14 personal jurisdiction.

15        For the purposes of general personal jurisdiction,

16 courts look to the interactive nature of the website.  In

17 Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp.

18 1119, 1124 (W.D.Pa. 1997) the United States District Court

19 for the Western District of Pennsylvania described a sliding

20 scale to determine if a commercial website submits its owner

21 to personal jurisdiction.  "At one end of the spectrum are

22 situations where a defendant clearly does business over the

23 internet.  The defendant enters into contracts with residents

24 of a forum jurisdiction that involve the knowing and repeated

25 transmission of computer files over the internet, personal

1  jurisdiction is proper, e.g., CompuServe, Inc. v. Patterson,

2  89 F.3d. 1257 (6th Cir. 1996).

3           "At the opposite end are situations where a

4  defendant had simply posted information on an internet

5  website which is accessible to users in forum jurisdictions.

6  A passive website that does little more than make information

7  available to those who are interested in it is not grounds

8  for the exercise of personal jurisdiction, e.g. Bensusan

9  Restaurant Corp. v. King, 937 F.Supp. 295 (S.D.N.Y. 1996).

10          "The middle ground is occupied by interactive

11 websites where a user can exchange information with a host

12 computer.  In these cases, the exercise of jurisdiction is

13 determined by examining the level of interactivity and the

14 commercial nature of the exchange of information that occurs

15 on the website, e.g. Maritz, Inc. v. Cybergold, Inc., 947

16 F.Supp. 1328 (E.D.Mo. 1996)."  And I quoted from Page 1124 of

17 the Zippo case.

18          Other cases have applied the same sort of sliding

19 scale.  See, for example, Cybersell, Inc. v. Cybersell, Inc.,

20 130 F.3d 414 at 418-419 (9th Cir. 1997), where the 9th

21 Circuit held an internet advertisement alone isn't sufficient

22 to confer personal jurisdiction over the advertiser.

23 Transcraft Corp. v. Doonan Trailer Corp., Civ. No. 97-4943

24 1997 WL 733905 at Page 8 to 10 (N.D.Ill. Nov. 17, 1997),

25 which held a website advertisement with an e-mail address for

Court Decision                                    76

1  inquiries was insufficient to subject a defendant to personal

2  jurisdiction.  CFOs To Go, Inc. v. CFO 2 Go, Inc., Civ. No.

3  97-4676 1998 WL 320821 at Pages 2 to 3 (N.D.Cal. June 5,

4  1998) held that a website with a description of the

5  defendant's business and contact information did not amount

6  to purposeful availment.  Smith v. Hobby Lobby Stores, Inc.,

7  968 F.Supp. 1356, 1364-65 (W.D.Ark. 1997).  In that case, the

8  District Court held that an advertisement in a trade

9  publication over the internet was insufficient to trigger

10  jurisdiction because it was not accompanied by a contract to

11  sell any goods or services to the citizens in the forum over

12  the website.

13          Notably in Zippo and in the cases that were cited

14  in Zippo, those cases actually dealt with specific personal

15  jurisdiction.  Indeed, "The majority of these opinions focus

16  either explicitly or implicitly on whether defendant's

17  internet activities support and exercise a specific, rather

18  than general, jurisdiction..." Dagesse v. Plant Hotel, NV,

19  113 F. Supp.2d 211, 220 (D.N.H. 2000).  See also Molnlycke

20  Health Care, AB v. Dumex Medical Surgical Products, Ltd., 64

21  F.Supp.2d 448, 452 Note 3 (E.D.Pa. 1999) where the District

22  Court held, "Most of the cases premising jurisdiction over

23  internet activity have ruled on the basis of specific

24  jurisdiction."  Coastal Video Communications Corp. v.

25  Staywell Corp., 59 F.Supp.2d 562, 570 Note 6 (E.D.Va. 1999)

1 which noted that the vast majority of internet-based personal

2 jurisdiction cases involve specific personal jurisdiction.

3         Plaintiff here is not arguing that the cause of

4 action arises from or relates to the activities regarding the

5 website.  Thus, the question before the Court is whether the

6 website constitutes a systematic and continuous contact with

7 New Jersey to confer general personal jurisdiction.

8         Now as I noted, some courts have applied Zippo's

9 sliding scale to a general personal jurisdiction analysis and

10 have concluded that passive informational websites, websites

11 through which one can request information are not sufficient

12 to confer general personal jurisdiction over its owner.  See

13 for example, Somma Medical International v. Standard

14 Chartered Bank, 196 F.3d 1292, 1295-1296 (10th Cir. 1999).

15         The Tenth Circuit there held the website at issue

16 "does little more than make information available to those

17 who are interested" and, therefore, does not represent

18 sufficient contacts to confer general personal jurisdiction.

19 Harbuck v. Aramco, Inc., Civ. No. 99-1971 1999 WL 999431 at

20 Page 6 (E.D.Pa. Oct. 21, 1999).  In that case, the District

21 Court described the website stating, "The website does not

22 provide users a place to order merchandise or services" and,

23 therefore, it was described as passive and found that

24 exercising personal jurisdiction on the basis of this contact

25 would be unreasonable.   Resnick v. Manfredy, 52 F.Supp.2d

1  462, 467-468 (E.D.Pa. 1999) holding the website offers

2  merchandise for sale, but where the consumers must mail or

3  call it in -- call in their orders is not sufficient contact

4  with the forum to support general personal jurisdiction.

5          See also Weber v. Jolly Hotels, 977 F.Supp. 327,

6  334 (D.N.J. 1997). There the District Court held that

7  advertising through passive website is "not tantamount to

8  directing activity at or purposely availing oneself of a

9  particular forum."

10         Some courts have held that even the maintenance of

11 a very interactive website could not, without more, form the

12 basis of general personal jurisdiction. In Molnlycke, 64

13 F.Supp.2d at 451, for example, the defendant's website

14 advertised products, including a product that was the subject

15 of the litigation, and the website permitted users to place

16 their names and addresses on a mailing list to receive

17 product information, and even permitted users to order the

18 product directly from the website by clicking on any listed

19 product, adding it to the shopping cart, completing an on-

20 line order form, and supplying credit card information, but

21 the District Court there held "the establishment of a website

22 through which customers can order products does not, on its

23 own...establish general jurisdiction." See the Molnlycke

24 case at Page 451.

25         In its reasoning, the court envisions a scenario

1    where the possibility of ordering products from a website
2    establishes general jurisdiction would effectively subject
3    any defendant with such a website to general jurisdiction in
4    every state.  See the opinion at Page 451.  See also Hy Cite
5    Corp. v. Badbusinessbureau.com, LLC, 297 F.Supp.2d 1154,
6    1161-1162 (W.D.Wi. 2004).  In that case, the court stated
7    there was no personal jurisdiction over a defendant in a suit
8    that arose from items posted on a website where plaintiff
9    relied on only two contacts arising from the website itself,
10   and where the defendant had no offices in the forum, its
11   agents do not spend substantial time in the forum, and it
12   does not do substantial business in the forum.

13            Slocum Enterprises' website in this case is
14   largely informational.  The site contains pages where a
15   viewer can enter his or her contact information and lists a
16   number of categories that attempt to educate its viewers
17   about the products and seminars that Slocum Enterprises
18   offers and contains a directory listing the T.P.L.O.
19   certified veterinarians in the states in which they practice.
20   Contrary to plaintiff's argument, the directory does not
21   target any particular state.  Indeed, the directory seems to
22   list all of the 50 states in which the certified
23   veterinarians reside or practice, and it is viewable over the
24   internet from every state and every country that has access
25   to the internet.  The site does not invite New Jersey

1 │ consumers anymore than it invites any other consumers from
2 │ any other state. It does not, for example, provide special
3 │ incentives to New Jersey veterinarians. See <u>Trintec</u>, 395
4 │ F.3d at 1281 describing "the difficulty" in relying on the
5 │ use of an interactive website to find personal jurisdiction
6 │ over a defendant, and that the website was "not directed at
7 │ customers in the [forum] but instead is available to all
8 │ customers throughout the country who have access to the
9 │ internet."

10 │        Thus, the website does not target New Jersey in
11 │ particular. Moreover, to the extent it has interactivity;
12 │ namely, to the extent it allows interested users to
13 │ unilaterally enter their contact information to obtain more
14 │ information about the product, or the procedure, or even to
15 │ initiate e-mail communications, there has not been a showing
16 │ by a preponderance of the evidence that any of the internet
17 │ users, and further any of the New Jersey internet users, have
18 │ actually accessed these mechanisms. To find personal
19 │ jurisdiction absent such a slowing would subject Slocum
20 │ Enterprises to general personal jurisdiction in every
21 │ jurisdiction in the United States, even if there are no sales
22 │ or resident licensed veterinarians located there, based on
23 │ the <u>possibility</u> a user could enter his or her information and
24 │ receive product information.

25 │        In the Court's view, this is inconsistent with due

Court Decision                          81

1   process.  See Hearst Corp. v. Goldberger, Civ. No. 96-3620

2   1997 WL 97097 at Page 20 (S.D.N.Y. Feb. 27, 1997).  In that

3   case, the Southern District of New York rejected the concept

4   that every plaintiff should be able to sue any defendant in

5   their home forum merely because the defendant maintains an

6   internet website.  See the Weber case, 1997 WL 574950 at Page

7   5 where the District Court held, "Advertising on the internet

8   falls under the same rubric as advertising in a national

9   magazine.  This Circuit has consistently held that

10  advertising in national publications do not constitute

11  substantial contacts with the forum state."  Internal

12  quotation marks omitted.

13          Arguably, a national website is like a national

14  publication that has cards that are inserted in the

15  publication that one can pull out from the publication, fill

16  in, and mail back to the entity who had the advertisement in

17  that national publication.  The Court is not aware of a case

18  that that sort of behavior would be sufficient to cause one

19  to find continuous and substantial contacts by virtue of the

20  placing of that sort of advertisement, and that sort of

21  interactivity.

22          It's important of course always to remember that

23  while websites provide a new means for communication or of a

24  sending of information, the analysis must still always harken

25  back to whether there's a reasonableness that would be

1   consistent with due process in exercising jurisdiction.

2         The Court notes that the New Generation website,
3   which apparently advertises product and may make its product
4   available for sale is at least similar to the Slocum
5   Enterprises website, and when the Oregon court had this case,
6   it appears that New Generation, and the Court found -- or at
7   least the Court found that the website was not sufficiently
8   interactive to satisfy the purposeful availment requirement.
9   See Slocum Enterprises, Inc. v. New Generation Devices, Civil
10  No. 04-201 slip opinion at Page 18 (D.Or. Aug. 23, 2004).
11  Thus, it would be inconsistent to treat websites that are
12  being described very similarly differently for the purposes
13  of a personal jurisdiction analysis.

14        Even considering the nature of the website along
15  with Slocum Enterprises' New Jersey sales, the high showing
16  of systematic and continuous contact with New Jersey has not
17  been met.  In Brown v. AST Sports Science, Inc. (phonetic),
18  Civil No. 02-1682 2002 WL 32345935 at Page 8 (E.D.Pa. June
19  28, 2002) for example, the United States District Court for
20  the Eastern District of Pennsylvania found a small number of
21  Pennsylvania sales where defendant's website did not
22  represent the continuous or purposeful contacts required for
23  general jurisdiction, and that the sales themselves did not
24  constitute a central part of defendant's business.

25        In Brown, the defendant's contacts consisted of

1  958 orders from the forum state, which accounted for 3.7

2  percent of its total orders.  See the opinion at Page 2.  The

3  Court noted, "While these contacts may or may not have been

4  sufficient for specific personal jurisdiction, the bar for

5  general jurisdiction is set much higher than that for

6  specific jurisdiction."  See the Brown opinion at Page 6.

7          Accordingly, they rejected plaintiff's argument

8  that general personal jurisdiction was proper over the

9  defendant.  See Page 8 of the opinion.  Slocum Enterprises'

10  website is less interactive than the website that was

11  discussed in Brown.  Indeed, there is no place on Slocum

12  Enterprises' website to consummate a purchase it appears by

13  entering, for example, credit card information.  Rather,

14  purchasers must send a separate e-mail, fax, or mail order to

15  purchase the specified product.

16          Further, to the extent there is an e-mail address

17  that a user can access, the invoices supplied to the Court

18  did not reveal whether or not these orders were placed

19  through e-mail, fax, regular mail, or telephone.  Therefore,

20  unlike the Brown case, the Court cannot truly gauge the

21  extent to which the website allows Slocum Enterprises to sell

22  its products to New Jersey residents.

23          Moreover, Enterprises's New Jersey sales represent

24  less than 1 percent of its overall sales, while the

25  defendant's sales within the forum in the Brown case

1   represented 3.7 percent of its overall sales.  The <u>Brown</u>

2   court found that the defendant sales within that forum fell

3   short of the continuous and purposeful contacts that are

4   required for personal jurisdiction.  See the <u>Brown</u> opinion at

5   Page 8.  See also <u>Hydro Engineering v. Landa, Inc.</u>

6   (phonetic), 231 F.Supp.2d 1131, 1133 to 1134 (D.Ut. 2002).

7          In that case, the District Court held general

8   personal jurisdiction was improper over a defendant that

9   maintained an informational website and sold 1.8 percent of

10  its overall sales in the forum state.  Likewise, this Court

11  finds Enterprises' internet contacts, taken along with its

12  sales to New Jersey residents, to be insufficient to meet the

13  substantial systematic and continuous standard required for

14  the finding of general personal jurisdiction.

15         Plaintiffs cited the <u>Decker v. Circus Circus Hotel</u>

16  case, 49 F.Supp.2d 743, 748 (D.N.J. 1999) for the proposition

17  that a court may exercise personal jurisdiction over a

18  defendant based on the existence of a website "whereas here,

19  the site is used to actively transact business and a user can

20  exchange information with the host computer."

21         With respect to that citation, the Court first

22  notes that Slocum Enterprises' website to be only slightly

23  more than a passive website, and even considering its New

24  Jersey sales, is not sufficient alone to support a finding of

25  personal jurisdiction.

1          Second, in the <u>Decker</u> case, the District Court for

2    the District of New Jersey suggests the maintenance of the

3    website could support a finding of personal jurisdiction

4    because "the defendants have effectively placed their hotel

5    and its services into an endless stream of commerce."  See

6    the <u>Decker</u> case at Page 748, citing <u>World-Wide Volkswagen</u> at

7    444 U.S. at 298.

8          The stream of commerce theory, however, "is

9    relevant only to the exercise of specific jurisdiction.  It

10   provides no basis for exercising general jurisdiction over a

11   nonresident defendant."  <u>Purdue Research Foundation v.</u>

12   <u>Sanofi-Synthelabo, S.A.</u>, 338 F.3d 773, 789 (7th Cir. 2003).

13   See also <u>Alpine View Co., Ltd. v. Atlas Copco, A.B.</u>, 205 F.3d

14   208, 216 (5th Cir. 2000).  In that case, the Appellate Court

15   rejected "a party's reliance on the stream of commerce theory

16   to support asserting general jurisdiction over a nonresident

17   defendant."  See also <u>Simeone Ex Rel, Estate of Albert</u>

18   <u>Francis Simeone, Jr. v. Bombardier-Rotax GMBH</u>, 360 F.Supp.2d

19   665, 673-674 (E.D.Pa. 2005), <u>Hy Cite</u>. 297 F.Supp.2d at 1162.

20         In the <u>Hy Cite</u> case the court also rejected a

21   plaintiff's reliance on the <u>Decker</u> case in support of an

22   argument for general personal jurisdiction based upon a

23   website.

24         Given that the only issue here at this point of

25   the analysis is whether or not there is general personal

Court Decision                                    86

1  jurisdiction over the defendants, the defendant case does not

2  apply.

3        While the Decker case suggests there could be

4  personal jurisdiction over a defendant under a stream of

5  commerce theory, it found there was no personal jurisdiction

6  based on a forum selection clause in that particular case.

7        In any event, for all of these reasons, the Court

8  is prepared to report to Judge Hayden that Slocum

9  Enterprises' contacts with New Jersey are not sufficiently

10  substantial, systematic, and continuous to support a finding

11  of general personal jurisdiction over Slocum Enterprises.

12        I now turn to the analysis of whether there's

13  general personal jurisdiction over Slocum Trust.  Like Slocum

14  Enterprises, Slocum Trust does not own property, pay taxes,

15  or maintain offices or have employees in New Jersey.

16  According to the record, the contacts that Slocum Trust has

17  with New Jersey are through the user license agreements that

18  have been executed over a period of several years.  The Court

19  must decide whether these contacts represent the type of

20  systematic and continuous contact sufficient to support a

21  finding of general personal jurisdiction.

22        In Bancroft & Masters, Inc. v. Augusta National,

23  Inc., 223 F.3d 1082 (9th Cir. 2000) the Court of Appeals for

24  the Ninth Circuit upheld the District Court's holding that a

25  defendant who had licensing agreements with two TV networks

Court Decision                                          87

1   and a handful of California vendors still did not have

2   sufficient contacts to support general personal jurisdiction.

3   The Court reasoned that engaging in commerce with residents

4   of the forum, without more, is the kind of activity that

5   "approximates physical presence within the state's borders."

6   See the opinion at Page 1086.

7          The Court contrasted the situation with that in

8   the Perkins case, which I've already discussed, where the

9   United States Supreme Court upheld Ohio's exercise of general

10  jurisdiction over a company whose president worked out of an

11  Ohio office from which he drew and distributed paychecks,

12  from which he performed company's filings and correspondence,

13  and in which regular directors meetings were held, and where

14  the company had two bank accounts.  See Perkins, 342 U.S. at

15  447-448.

16         Thus, the Bancroft court held that the defendant's

17  limited contacts with California "constituted doing business

18  with California, but do not constitute doing business in

19  California."  223 F.3d at 1086 citing Helicopteros case, 466

20  U.S. at 418, and the emphasis has been added in the quote.

21         As in the Bancroft case, Slocum Trust has no

22  contacts with New Jersey other than through the license

23  agreement which was signed in Oregon with several New Jersey

24  veterinarians.  It's been represented that the total

25  licensees is 11.  There's nothing in the record to show that

1  the Trust solicited these agreements.  Moreover, although the

2  agreements suggest the opportunity for an ongoing

3  relationship between the veterinarian and the Trust; namely,

4  the right of the Trust to monitor the use of the patented

5  products, and the obligation of the licensee to report

6  infringing activity, there's nothing before the Court to show

7  the Trust ever initiated further contact with any of the

8  licensees.

9          Moreover, the user license agreements authorize

10  the licensees to use the patented products anywhere.

11  Presumably, the defendant could license a New Jersey

12  veterinarian to use the product.  That licensee could move to

13  Alaska, for example, and under the plaintiff's theory, the

14  defendant would be subject to general personal jurisdiction

15  in that state.  Such would not be considered purposeful

16  availment, and for this reason, personal jurisdiction over

17  the Trust is improper.

18          Lastly, the Trust has not "purposely availed"

19  itself to New Jersey, because the user license agreement

20  selected Oregon law in an Oregon forum to resolve disputes.

21  I note that of course New Generation would not be subjected

22  to that agreement, but the test for minimal contacts in the

23  personal jurisdiction analysis has often been restated as a

24  determination as to whether or not the defendant has

25  "purposely availed itself" of the benefits and protection of

1  the forum state's laws.  See <u>Hanson v. Denckla</u>, 357 U.S. 235,
2  253 (1958).

3       Where a party's dealings were governed by foreign
4  law, courts have found it doubtful a defendant's actions
5  constitute purposeful availment.  See, for example, <u>Marathon</u>
6  <u>Oil Co. v. A.G. Ruhrgas</u>, 182 F.3d 291, 295 (5th Cir. 1999)
7  where the court noted the defendant could not have
8  "reasonably expected to have been brought into Texas courts
9  because of its presence at meetings inasmuch as the meetings
10  and related communications dealt with...a contract governed"
11  by foreign law.  See <u>Sea Lift, Inc. v. Refinadora</u>
12  <u>Costarricense de Petrillio, S.A.</u>, 792 F.2d 989, 994 (11th
13  Cir. 1986).

14       Even if the Slocum Trust user agreements with New
15  Jersey veterinarians were to be considered sufficient for
16  general jurisdiction, it cannot be said that they'd purposely
17  availed themselves to New Jersey law.  To the contrary, the
18  defendants have sough to avoid New Jersey courts, and the
19  courts of every other jurisdiction, other than Oregon.
20  Indeed, had a dispute ever arisen under the user license
21  agreement, either party would have been able to invoke the
22  clause to apply Oregon law, and assuming other considerations
23  were met, to transfer the case to the U.S. District Court for
24  the District of Oregon if the case had been initiated in a
25  forum other than that.

1    While the Court is mindful of the existence that
2 such a clause does not preclude a finding of personal
3 jurisdiction, see Deprenyl, 297 F.3d at 1354, the choice of
4 law and choice of forum provisions, taken together with all
5 of the reasons I've already articulated, militate against a
6 finding of general personal jurisdiction over the Trust.

7    Therefore, the Court is prepared to report to the
8 Honorable Kathryn S. Hayden that the Court lacks general
9 personal jurisdiction over the Slocum Trust.

10    The Court now turns to the question of specific
11 personal jurisdiction. In determining the existence of
12 specific personal jurisdiction, the Court of Appeals for the
13 Federal Circuit requires a court to consider whether or not;
14 one, the defendant purposely directed its activities at the
15 residence of the forum; two, the claim arises out of or
16 relates to the defendant's activities with the forum; and
17 three, assertion of personal jurisdiction is reasonable and
18 fair. See Inamed, 249 F.3d at 1360, citing Akro Corp. v.
19 Luker, 45 F.3d. 1541, 1545 (Fed. Cir. 1995).

20    The Federal Circuit explained in Inamed that "the
21 first two factors correspond with the minimum contacts prongs
22 of the International Shoe analysis and the third factor
23 corresponds with the fair play and substantial prong of that
24 analysis." 249 F.3d at 1359, internal quotation marks
25 omitted, Silent Drive 326 F.3d at 1202 and Deprenyl, 297 F.3d

1    at 1351.

2          The first factor which is really -- comes from the

3    Akro case, requires consideration of whether or not the

4    defendants have directed contacts to New Jersey that should

5    have caused them to reasonably anticipate being haled into

6    court here.  World-Wide Volkswagen, 444 U.S. at 297.

7          Here Slocum Enterprises sold products to New

8    Jersey, albeit it less than 1 percent of its total sales, and

9    the Trust maintains a nonexclusive license agreement with

10   several New Jersey veterinarians.  For the purposes of the

11   specific personal jurisdiction analysis, the Court is going

12   to assume that these contacts are purposeful.

13         With respect to the second Akro factor, the Court

14   finds that the cause of action does not arise from or relate

15   to the defendant's contacts with the New Jersey.  The Federal

16   Circuit has recognized that the disjunctive nature of the

17   "arises out of or relates to" test indicates "added

18   flexibility" and signals "a relaxation of the applicable

19   standard" from a pure "arise out of" standard.  See the Akro

20   case, which was quoting Ticketmaster-New York, Inc. v.

21   Alioto, 26 F.3d 201 at 206 (1st Cir. 1994).

22         This consideration is unique to the specific

23   personal jurisdiction analysis and "insures that the element

24   of causation remains in the forefront of the due process

25   investigation" thereby allowing the Court to consider the

1  strength or weakness of the plaintiff's relatedness showing
2  in deciding the fundamental fairness of allowing the suit to
3  proceed.  Ticketmaster-New York, 26 F.3d at 207.

4          In declaratory judgment actions such as this, the
5  courts look to the defendant's contacts with the forum state.
6  Many times these contacts involve infringement letters or
7  litigation warnings from the patent holder to the declaratory
8  judgment plaintiff in the forum state.  Courts have largely
9  held that such contacts without more are insufficient to
10  sustain a finding of specific personal jurisdiction over the
11  patent holder.  See Akro, 45 F.3d at 1543.

12          In the Akro case, the court held that infringement
13  letters in an exclusive licensing agreement that obligated
14  defendant to defend the licensee for challenges to the
15  patent's validity or enforceability were in that case
16  sufficient to confer specific personal jurisdiction.  Ryobi
17  America Corp. v. Peters, 815 F.Supp. 172, 176 (D.S.C. 1993)
18  which held that infringement letters without more cannot give
19  rise to either general or specific jurisdiction.  KDH
20  Industries, Inc. v. Moore, 789 F.Supp. 69, 73 (D.R.I. 1991)
21  which held that one or more letters which asserted certain
22  patent rights could not give rise to personal jurisdiction
23  either specific or general.

24          Now the Court notes that there is no such
25  communication by the defendants to the plaintiff in this

1   case, but the Court did find those cases informative to the
2   extent that it guided the Court to be clear that there needs
3   to be a connection through the arises out of or related to
4   prong of this litigation and the conduct of the defendants.

5          Plaintiffs argue that since its lawsuit seeks a
6   declaratory judgment of non-infringement that the defendant's
7   sales of patented products and user licensing agreements "are
8   probative" and, therefore, specific personal jurisdiction is
9   proper.  See the plaintiff's brief at Page 16.

10         In their brief they cite VP Intellectual
11  Properties, LLC v. Imtec Corp., Civ. No. 99-3136 1999 WL
12  11255204 at Page 5 (D.N.J. Dec. 9, 1999) for the proposition
13  that "regardless of the quantity of products sold or the
14  shipping method used, the sale of patented products, the
15  buyers, and the forum, the state creates specific personal
16  jurisdiction over an out-of-state seller."  See their brief
17  at Page 16.

18         I note that same quote was discussed here in open
19  court today, and the Court already discussed with the
20  plaintiff that the preceding sentence in the case states
21  that, "In patent cases, the law is clear that where a
22  defendant infringer is shown to have sold the allegedly
23  infringing product in the forum state, the forum may exercise
24  [specific] personal jurisdiction over the...defendant."  See
25  the VP Intellectual case at Page 5, citations omitted.  And I

1  would like to add an emphasis under the words "defendant

2  infringer." The Court had discussions with counsel about

3  this very case and notes the argument that the plaintiff was

4  making with respect to the value of the proposition for which

5  it cited the VP Intellectual case.

6          What appears from the VP Intellectual case,

7  however, is that the District Court was informed by the fact

8  that it was dealing with the defendant's conduct; that is,

9  the defendant infringer allegedly sold the infringing product

10 in the forum state, and this gave the defendant his own

11 actions "fair warning" that he could be hailed into a court

12 in the forum state, as well that the forum in which the

13 allegedly infringing product is sold has an interest in

14 prohibiting the importation of infringing articles into the

15 forum itself. Osteotech, Inc. v. Gensci Regenerations, Inc.,

16 6 F.Supp.2d 349, 354 (D.N.J. 1998).

17         Here we do not have a plaintiff who has brought a

18 patent infringement claim and thus Slocum Enterprises cannot

19 be said to have sold any "allegedly infringing" products in

20 New Jersey. Thus, the goal of prohibiting the importation of

21 infringing articles into the forum is not present here as it

22 was present in the VP Intellectual Properties case.

23 Moreover, if the sales of a patented product were enough to

24 confer jurisdiction over a patent holder, then a holder of a

25 presumably valid patent would be amenable to declaratory

1  judgment actions for non-infringement or invalidity in any

2  state in which it sold the patented product and this would

3  not provide the patent holder sufficient fair warning to make

4  it amenable to suit in a foreign jurisdiction.  Accordingly,

5  the VP Intellectual case is inapposite.

6            A declaratory judgment action is distinguishable

7  from the action of VP Intellectual.  Such an action seeks to

8  declare the patent unenforceable and invalid, and a

9  declaration that the plaintiff's product does not infringe.

10 None of these allegations relate to the defendant's sale of

11 its patented product and the plaintiff does not seek damages

12 arising from such sales.  Plaintiff's claims of invalidity,

13 unenforceability, and non-infringement "neither arise out of

14 nor relate to the activities in which [defendant] has engaged

15 in order to exploit those patents, including producing and

16 promoting products covered by the patents.  Indeed

17 [plaintiff] claims no injury flowing from [defendant's]

18 production, marketing, and sales of its products.

19 Accordingly, there does not appear to be any nexus between

20 plaintiff's marketing and sale of its products in [the forum]

21 and the subject matter of [plaintiff's] claims...which

22 concern only the patent's validity and [its] own actions

23 [defendant's] contacts with [the forum] likewise are not

24 related to the operative facts of [plaintiff's] patent

25 claims."  Zumbro, Inc. v. California Natural Products, 861

1  F.Supp. 773, 780 (D.Minn. 1994) internal quotation marks

2  omitted.

3          Under this reasoning, the <u>Zumbro</u> court held there

4  was insufficient relationship between the defendant's

5  patentees sales of patented products within the forum and the

6  plaintiff's claims that sought declarations of non-

7  infringement and invalidity.  See also <u>Ryobi</u>, 815 F.Supp. at

8  176 noting in a patent action seeking declaration of

9  invalidity and non-infringement "the essential transaction

10  here is the granting of a patent in Washington, D.C. and

11  [plaintiff's] subsequent manufacture of an allegedly

12  infringing product."  See also <u>International Communications,</u>

13  <u>Inc. v. Wavetech, Inc.</u>, 694 F.Supp. 1347, 1352 (E.D.Wi. 1988)

14  where the District Court held that "the real source of

15  plaintiff's cause of action is not the correspondence

16  received, but the existence and ownership of the patent" and

17  noting, "the defendant's ownership and use of the patent is

18  not in any way connected with [the forum state]"  See <u>Ham v.</u>

19  <u>LaCienega Music Co.</u>, 4 F.3d 413, 416 (5th Cir. 1993).

20          Now that was a copyright infringement declaratory

21  action case, but there the court said the defendant's sale of

22  products embodying the allegedly copyrighted materials within

23  the forum where plaintiffs allege no injuries flowing from

24  such sales were unrelated to the merits of whether or not the

25  plaintiff infringed the copyright.  See also <u>Bountiful</u>

1  Entertainment, Inc. v. Forever Blue Entertainment Group, Inc.

2  (phonetic), 923 F.Supp. 950, 957 (S.D.Tx. 1996).

3          That was a copyright and trademark declaratory

4  judgment action and the court noted, "It is not relevant for

5  personal jurisdiction purposes the defendants Tradewinds and

6  AMG are marketing their TV show directly here in Houston

7  because an action for declaratory judgment for non-

8  infringement does not arise out of or relate to the marketing

9  activity."

10         Furthermore, the action does not implicate the

11  license agreements between Slocum Trust and the New Jersey

12  licensees for any kind of a breach of a sales contract

13  between the Enterprises and a New Jersey purchaser.  Rather,

14  the issue here is whether or not New Generation products

15  infringed one or more of the patents in suit and whether or

16  not the patents are valid and enforceable.  Thus, the conduct

17  from which the action arises into which the action relates,

18  in part, deals with New Generation's activity with respect to

19  the infringement prong, and it deals with the defendant's

20  activity in its patent with respect to validity and

21  unenforceability.

22         To the extent plaintiff's claims seek a

23  declaration of patent invalidity and unenforceability and,

24  therefore, could seek to implicate the defendant's conduct,

25  there's been no evidence that such conduct took place within

1   this forum.   Indeed, conduct in procuring a patent occurred,

2   I guess in part in Oregon, and certainly in Washington, D.C.

3            And as I stated at the outset of delivering this

4   opinion, while the Court is prepared to report to the

5   Honorable Kathryn S. Hayden that there appears to be no

6   specific jurisdiction over either of the defendants and no

7   general jurisdiction over either of the defendants, and

8   recommend that Her Honor grant the motion to dismiss, it is

9   going to delay issuing this recommendation to allow the

10  parties to show cause why the case should or should not be

11  transferred to a place that it could have otherwise been

12  brought, such as Oregon or the District of Columbia.   And the

13  Court would ask for these letters by Thursday.

14           So I appreciate your patience while the Court

15  delivered that opinion.   The one thing that I did not deliver

16  because of its length were a number of cases that talk about

17  general jurisdiction and percentages of sales.   And what the

18  Court was trying to do is educate itself on what counts and

19  what would be enough.

20           I'm certainly happy to read those into the record

21  so you have them, but if you don't want them, I won't.   So I

22  leave it to you whether you want me to read them into the

23  record.      MR. FRISCIA:   I don't think there's any need for

24  it.

25           THE COURT:   Counsel, is there any need for that?

1          MR. COOPER:  I'd appreciate the cites.

2          THE COURT:  Okay.  Just give me a moment, please.

3          In the portion of the opinion where the Court was

4 discussing the amount of contact courts look to, to determine

5 whether there's sufficient contact for the exercise of

6 general jurisdiction, aside from the cases read into the

7 record, the Court did read the <u>Hydro Engineering v. Landa</u>

8 case, 231 F.Supp.2d 1130, 1133-1134 (D.Ut. 2002).  It also

9 considered the <u>Hockerson-Halberstadt, Inc. v. Costco</u>

10 <u>Wholesale Corp.</u>, Civil No. 91-1720 2000 WL 726888 at Page 2

11 (E.D.La. June 5, 2000); <u>Morrison Co. v. WCCO Belting, Inc.</u>,

12 35 F.Supp.2d 1293, 1296 (D.Kan. 1999); the <u>VP Intellectual</u>

13 <u>Property</u> case we've already discussed; <u>Barry v. Mortgage</u>

14 <u>Services Acquisition Corp.</u>, 909 F.Supp. 65, 75-76 (D.R.I.

15 1995); the <u>Bancroft</u> case, which we've discussed at 45

16 F.Supp.2d 777 (N.D.Cal. 1998).  I note for the record that

17 the Ninth Circuit affirmed the general jurisdiction finding

18 in <u>Bancroft</u>, but reversed on specific jurisdiction, 223 F.3d

19 1082, 1086; <u>Hoss v. A.M. King Industries, Inc.</u> (phonetic), 28

20 F.Supp.2d 644, 650 (D.Ut. 1998); <u>Modern Mailers</u>, which was a

21 case we discussed in the opinion at pages -- 844 F.Supp. at

22 1050-1051; <u>Roman v. Geissenburger Manufacturing Corp.</u>, 865

23 F.Supp. 255, 261 (E.D.Pa. 1994); the <u>Nichols</u> case, there was

24 a partial reference to it in the opinion main, and the full

25 cite is <u>Nichols v. G.D. Searle & Co.</u>, 991 F.2d 1195, 1200

1  (4th Cir. 1993).

2           So those are just another -- cases that talk about

3  the kinds of contacts the courts look to when you're talking

4  about sales, as well as other things like the presence of

5  property, business representatives, visits to the District,

6  and the like.

7           So I'll leave you to look at those if you choose

8  to.  So I thank you for your patience, and your arguments

9  today, and your submissions.  I hope we can find a home for

10  you.  That would be the good and right thing, but I look

11  forward to seeing your submissions on this point.  If you can

12  come up with an agreement as to a location, dynamite, but at

13  the very least I would like the benefit of your thoughts of

14  whether there's a place this Court can transfer it to, and I

15  just want to put one other thing on the record, so you're

16  aware of it.

17           Despite the lack of personal jurisdiction, a

18  District Court may transfer a case to a district where the

19  case could have otherwise been brought.  See 28 U.S.C.

20  Sections 1404, 1406(a), and 1631.  See also Goldlawr v.

21  Heiman, 369 U.S. 463, 465 (1962), Verissimo v. Immigration

22  and Naturalization Service, 204 F.Supp.2d 818, 820 (D.N.J.

23  2002).

24           1406 applies to any obstacle that might prevent

25  the orderly and expeditious adjudication of a case on its

1  merits, including a lack of personal jurisdiction in an

2  otherwise correct venue.  <u>Carteret Savings v. Shushan</u>, 721

3  F.Supp. 705, 709 (1989).

4        1391 is the venue statute which we would look at

5  of course in determining the proper venue, and there's

6  certainly case authority that allows a court to exercise its

7  sua sponte discretionary power to transfer a case to another

8  district under any of these sections after determining it

9  lacks personal jurisdiction, so long as the other provisions

10  are satisfied.

11        So that's at least the legal authority that was I

12  looking to, to see if I could find you a home.  If you would

13  like to consent to stay with us, we're happy to have you.

14        All terms of all the other orders will remain in

15  effect until there's either an adoption of this report and

16  recommendation or a transfer, and some other judge gives you

17  a different scheduling order, so continue on that schedule.

18        Is there anything I can do for counsel today?

19        MR. FRISCIA:  No, thank you, Your Honor.

20        THE COURT:  Okay.  Anything else, Counsel?

21        MR. COOPER:  Thank you, Your Honor.

22        THE COURT:  Okay.  Thank you very much.

23        (Proceedings concluded)

I, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter on May 23, 2005, to the best of my knowledge and ability.

Date: 3/28/05

10:13:24-11:01:31;
11:04:48-12:30:44

Patricia A. O'Neill
RAPID TRANSCRIPT SERVICE, INC.